SMITH and another, Respondents, vs. WILSON and another, imp., Appellants.

*January 10 — January 30, 1894.*

*Partnership: Attachment: Vacating judgment: Discretion.*

The traverse of an affidavit for an attachment against a firm was withdrawn, and judgment for the plaintiffs entered, pursuant to a stipulation signed by the attorneys who had appeared for the firm and who were acting under the direction of one of the partners. Afterwards two of the partners moved that the judgment and an execution sale thereunder be set aside and that they be allowed to traverse the affidavit for attachment, on the ground that the former traverse had been withdrawn without their knowledge or consent. *Held*, that the matter was one within the discretion of the trial court, and that its decision denying the motion would not be disturbed except for an abuse of discretion, which in this case was not shown.

APPEAL from the Circuit Court for *Douglas* County.

At the times herein named the defendants, *Wilson*, *Clark*, Morrison, and Thatcher, were copartners doing business in Superior under the firm name of R. F. Wilson & Co. On March 14, 1893, this action was commenced against said defendants, and a writ of attachment issued therein, based upon an affidavit of one of the plaintiffs, from which it appears that the defendants were indebted to the plaintiffs in the sum of $366.32 over and above all legal setoffs; that the defendants were each and all nonresidents and

had assigned, conveyed, disposed of, or sold, or were about to assign, convey, dispose of, or sell, their property, with intent to defraud their creditors. On March 15, 1893, the sheriff levied said writ upon a stock of groceries belonging to said firm, subject to a prior attachment in favor of the Twohy Mercantile Company and against said R. F. Wilson & Co., and also upon some real estate owned by the defendant Morrison. The several papers in the case were served upon the defendants April 5, 1893.

On April 21, 1893, Reed, Grace, Rock & Reed, attorneys at Superior, served upon the plaintiffs a notice of retainer upon behalf of all the defendants, and demanded a copy of the complaint herein, which was served upon them May 2, 1893. On May 5, 1893, the said defendants, by their said attorneys, Reed, Grace, Rock & Reed, made and served a special answer in the cause, traversing the said affidavit for attachment. On June 17, 1893, the said Reed, Grace, Rock & Reed signed a stipulation in said cause that said special answer be withdrawn and that the plaintiffs have judgment against the defendants forthwith for $366.32, with interest from March 9, 1893, and their costs. On June 20, 1893, judgment was rendered, pursuant to said stipulation, against all of said defendants, for $411.46 damages and costs. Execution was issued thereon immediately, and on June 21, 1893, together with four other executions, was levied upon the property which had been so previously attached, and by virtue of said five executions all of the personal property so attached was sold on July 12, 1893, for the sum of $2,000. After the sheriff had received the purchase price for which said goods were so sold, the plaintiffs served a notice upon him, and claimed enough of said proceeds to satisfy their said judgment. The defendants *Clark* and *Wilson* thereupon served upon said sheriff notice not to pay over any part of the money in his hands arising from the proceeds of the sale of said personal property, and claimed the same.

And the said Twohy Mercantile Company also served notice on said sheriff claiming the money in his hands arising from the proceeds of said sale upon their execution and prior attachment.

On July 27, 1893, the defendants *Wilson* and *Clark*, by Pealer, Titus & Lemmon as their attorneys, served notice of appearance in the cause, and moved the court to vacate and set aside the aforesaid judgment, and to permit the said *Wilson* and *Clark* to traverse the plaintiffs' said affidavit for attachment, which motion was based upon affidavits annexed.

On August 8, 1893, the court, after "having heard the affidavits and proofs of the parties and the arguments of counsel for the respective parties, and on motion of the attorneys for the plaintiffs, ordered that said motion to vacate said judgment be, and the same" was thereby, denied, with $3 costs. From that order the defendants *Wilson* and *Clark* appeal.

For the appellants there was a brief by *Pealer, Titus & Lemmon,* and oral argument by *A. C. Titus.*

For the respondents there was a brief by *Knowles, Dickinson, Buchanan, Graham & Wilson,* and oral argument by *S. N. Dickinson.*

CASSODAY, J. The proceedings resulting in the entry of the judgment, the issuing and levying of an execution upon the property of the defendants, and the sale thereof by the sheriff, sufficiently appear in the foregoing statement. The order refusing to vacate the judgment and all subsequent proceedings thereon, and to allow the defendants *Wilson* and *Clark* to traverse the affidavit for the attachment, is based upon "the affidavits and proofs of the parties." The affidavits of *Wilson* and *Clark* are to the effect that the affidavit for the attachment was wholly and absolutely false and untrue; that the firm of R. F. Wilson & Co. dis-

solved April 13, 1893; that the withdrawal of the traverse June 17, 1893, was without the knowledge or consent of any of the defendants except Morrison, and against the express instruction of *Wilson* and *Clark;* that *Wilson* and *Clark* did not know of such withdrawal until July 12, 1893; that the purpose of *Wilson* and *Clark* in seeking to open and set aside the judgment was to permit the defendants to make such traverse.

The affidavits on the part of the plaintiffs are to the effect that at the time of the issuing of the attachment *Wilson* and *Clark* were in Europe; that the partnership business was then being conducted by Morrison and Thatcher; that the firm was then insolvent; that several attachments upon the grounds mentioned were issued against the firm about that time, some of which, including one in favor of the Twohy Mercantile Company upon a claim for $3,200, were prior to the plaintiffs'; that Reed, Grace, Rock & Reed were employed by Morrison, in behalf of R. F. Wilson & Co., April 9, 1893; that Grace concluded that the attachment in favor of the Twohy Mercantile Company was void for want of a sufficient bond; that,.upon *Wilson's* return from Europe, he made some arrangement· with the Twohy Mercantile Company whereby he expected to resume business, and so requested Grace to withdraw the appearance in the case of the Twohy Mercantile Company, and permit judgment to be confessed therein, so as to give that company priority over other creditors; that upon objection being made, and on or about May 1, 1893, all the defendants agreed to make a voluntary assignment; that the same was drawn by Grace, and executed by *Clark,* Morrison and Thatcher, but that *Wilson* finally refused to sign the same, for the reason that the "Twohy Mercantile Company should have the preference;" that thereafter *Wilson* ceased to consult with Reed, Grace, Rock & Reed, and consulted and advised with other attorneys about the matter; that

neither *Wilson* nor *Clark* ever instructed Grace or his firm not to withdraw the traverse.

The attachment was issued upon the grounds that the defendants were each and all nonresidents and had disposed or were about to dispose of their property with intent to defraud their creditors. The affidavits of *Wilson* and *Clark* are to the effect that such statement was untrue, but neither of them say that the defendants or any of them were at the time residents of the state, or that no such disposition of firm property with such fraudulent intent had been made or contemplated by the defendants, much less by Morrison and Thatcher, who were in sole charge of the partnership business at the time the attachment was issued. As indicated, *Wilson* and *Clark* had knowledge as early as May 1, 1893, that Morrison and Thatcher, and Reed, Grace, Rock & Reed, as attorneys for all the defendants, proposed to conduct the case in a manner unsatisfactory to them,— at least, unsatisfactory to *Wilson*, and that he had consulted other attorneys about the matter. And yet they took no affirmative action until more than twelve weeks thereafter, and in the mean time judgment had been entered, June 20, 1893, and an execution issued thereon, and all the property of the firm sold on that and four other executions, July 12, 1893.

Assuming that Reed, Grace, Rock & Reed had no authority to withdraw the traverse without the consent of *Wilson* and *Clark* as well as Morrison and Thatcher, yet it was, at most, an irregularity. It did not deprive the court of jurisdiction to enter the judgment, nor the sheriff of authority to make the sale on the five several executions, including the one in this case. The motion to set aside the judgment and the sale was addressed to the equity powers of the court, and rested in its sound discretion. We are constrained to hold that in denying the motion there was no abuse of that discretion, upon the showing made. A

strong and affirmative case must be made before this court
will interfere with such exercise of discretion.  *Seymour v.
Chippewa Co.* 40 Wis. 62; *Salter v. Hilgen*, 40 Wis. 363;
*Pier v. Amory*, 40 Wis. 571; *Thomas v. West*, 59 Wis. 103;
*Wilkinson v. Rewey*, 59 Wis. 554; *Cole v. Mitchell*, 77 Wis.
131.   These cases abundantly illustrate the principle upon
which the rule is based.   In some of them the judgment
was entered prematurely.   In others it was entered with-
out notice, when notice was required by the statute.   Some
refused to restrain the sale upon execution issued upon an
irregular judgment.   But it is unnecessary to continue the
discussion.

*By the Court.*— The order of the circuit court is affirmed.