(92 N. W. Rep. 834.)

---

CITY OF FARGO *vs.* GORDON J. KEENEY, *et al.*

---

**Eminent Domain—Judgment—Vacating.**

This is an action brought to condem land owned by the defendants for the improvement of a public street in the city of Fargo by adding 40 feet to the width of the street. Judgment was entered condemning the land for such use, and awarding the defendants $5,000 as damages. Subsequently, and upon the application of the plaintiff, the district court vacated the judgment, and awarded a new trial. From this order defendants appeal to this court. For reasons stated at length in the opinion, the order appealed from is sustained upon the ground that the judgment was entered by the inadvertence and mistake of the plaintiff's counsel.

Appeal from district court, Cass county; *Pollock, J.*

Action by the city of Fargo against Gordon J. Keeney and others to condemn land. Judgment set aside, and defendants appeal. Affirmed in part.

*Morrill & Engerud,* for appellants.

*M. A. Hildreth,* for respondent.

WALLIN, C. J. The facts in the record which we deem important to a decision of this case, briefly stated, are as follows: The defendants Patrick Devitt and Lottie E. Keeney are, and when this action commenced were, the owners, as tenants in common, of a certain strip of land 40 feet in width within the city of Fargo; said land consisting of 14 lots, numbered from 1 to 14, inclusive, and embraced within Keeney & Devitt's Third addition to the city of Fargo. It appears that said strip of land is parallel to and adjoins a certain street of said city, viz., Seventh avenue north; and it further appears that, in the opinion of the city council, it was necessary to so enlarge and widen said Seventh avenue north as to embrace said strip of land, and the whole thereof. The record shows that on December 10, 1901, the city council of the city of Fargo, being then in session, adopted a certain resolution looking to the acquisition of the title to the strip of land in question. Said resolution, so far as the same is now material, is as follows: "Be it resolved by the common council of the city of Fargo, that it is necessary to the well-being of said city and the citizens thereof, and particularly to those people who live along and adjacent to 7th Ave. north, that the said 7th avenue be opened its full width as a street." Here follows a description of the land in question. After describing the land, the resolution proceeded as follows: "Furthermore, that the city attorney be empowered and is hereby instructed to commence condemnation proceedings for the purpose of acquiring possession of the tracts as above described, for the use of the city as a street." Soon after the adoption of the resolution by the city council, this action was instituted; H. F. Miller, as attorney, appearing for the city, and Morrill & Engerud appeared for the defendant Lottie E. Keeney; and S. G. Roberts, then an alderman of the city, appeared as attorney for the defendant Patrick Devitt. It will not be necessary to set out the pleadings in the action further than to state that the complaint set out the substance of said resolution of December 10, 1901, and other facts tending to show that the strip of land in question was needed for a public purpose, viz., for widening said Seventh avenue north. The relief demanded was, in substance, that the land in question should be condemned for the use of said city as a street, and that the court should determine the value of the use of such land for street purposes. The defendants Patrick Devitt and Lottie E. Keeney answered separately, but the answers raised no substantial issues, but, on the contrary, practically conceded that said land was needed for public use as stated in the complaint. But it was alleged in said answers, respectively, that the total value of said land was the sum of $6,000. After issue was so joined in the action, counsel entered into a stipulation whereby a jury trial was waived, and counsel consented that the trial court should appoint three referees to try all the issues embraced in the action, and upon such stipulation the trial court, by its order, appointed three referees to try all the

issues. The record further shows that said referees, after taking the statutory oath, proceeded to take the evidence offered by the respective parties. There was some formal evidence offered relating to the title of the land in question, about which there is now no dispute, and two witnesses were sworn as to the value of the land, and both testified, in effect, that its aggregate value was $5,000. The record shows the further fact that a certified copy of a certain other resolution of the city council, adopted March 3, 1902, was put in evidence by the city attorney without objection, which resolution is as follows: "Be it resolved by the mayor and common council of the city of Fargo, that it is necessary and essential to the well-being and growth of said city, and particularly to the persons residing along Seventh avenue north and adjacent thereto, that said Seventh avenue, which is now only forty feet in width, be opened and widened forty feet more by the purchase and addition thereto of forty feet of land extending from Broadway to Second street, along said Seventh avenue north, making the width of said street, when so opened, eighty feet and uniform with other streets." Upon the hearing of the order to show cause evidence was received showing the publication of the last-mentioned resolution in the official newspaper of the city. The record of the proceedings had at said council meeting held March 3, 1902, embraces the following entry: "The city attorney reported verbally that progress was being made in the matter of condemning and securing Keeney & Devitt's Third addition for street purposes." Also the following: "Upon motion by Alderman Roberts, the city attorney was instructed to proceed with the condemnation proceedings upon the lines indicated in his report." The undisputed evidence also showed that there was not, at the time of the trial, a dollar available in the city treasury with which to pay any judgment against the city. After taking the evidence the referees submitted their report to the court, embracing findings of fact and conclusions of law. The findings of the referees need not be set out further than to state that the referees found as facts that the city council adopted said resolution of December 10, 1901; that the plaintiff by this action, is seeking to acquire the strip of land in question for public use as a street; that the land sought is necessary and ought to be acquired for such use; and that the defendants Lottie E. Keeney and Patrick Devitt are the sole owners of the land, and that the land is of the aggregate value of $5,000. As conclusions of law the referees found as follows: "Conclusions of Law: (1) That the said plaintiff city of Fargo has the right and power conferred upon it by law to lay out, open, grade, and otherwise improve the streets within its corporate limits; and that when it becomes necessary, in order to make any of said improvements herein specified, to take or damage private property, said plaintiff corporation may exercise the right of eminent domain for any public use authorized by law, in the manner provided in chapter 35 of the Code of Civil Procedure of the Revised Codes of North Dakota,

and has the power to exercise the right of eminent domain in the taking of the property in the complaint and in the findings of fact herein mentioned and described, and have the same condemned for the proposed public use as a street. (2) That the damage for the taking of the said lots and parcels of land hereinbefore described, as aforesaid, is five thousand dollars ($5,000.00)." The report of the referees was confirmed, and judgment was entered in the trial court to the effect that the said owners of the land should, respectively, have judgment against the city for the sum of $2,500 and costs, and that the land in question should be condemned for said street purposes, and that the title thereof be, and the same was, by the terms of the judgment, vested in the city of Fargo. This judgment was entered March 7, 1902. Later, upon an affidavit made by M. A. Hildreth, and other proofs, the trial court issued an order to show cause why the judgment so entered should not be vacated and set aside, or for such other and further relief as the court might deem proper to grant. No counter affidavits were submitted. The hearing of the order to show cause resulted in an order of the district court vacating said judgment and granting a new trial, and from such order the defendants have appealed to this court.

The affidavit of M. A. Hildreth, upon which the order to show cause was issued, is as follows: "M. A. Hildreth, being duly sworn, says he is city attorney and attorney for the plaintiff in this proceeding. That upon taking the office on the 15th of April, 1902, he was ordered by the common council of the city of Fargo to investigate the judgment against the city of Fargo in this action, and report at the next meeting of the common council. That he did make such report to the common council on the 5th day of May, 1902. That he advised the common council that such judgment was invalid, and should be vacated and set aside. Affiant makes a part of this affidavit a certified copy of the proceedings of the common council relating to the instituting of this suit. That under section 2279 of the Civil Code of this state it was necessary that the common council pass a resolution to open up the street in question and to have the same condemned for street purposes. That, from the records of the common council, said resolution was passed on the 3d day of March, 1902. That it was voted for and by, among other common councilmen, by the Hon. S. G. Roberts. That this resolution was published on March 8, 15, 22, and 29, 1902, and that said suit was at that time pending in this district court of this county and state, the same having been brought on the 20th day of January, 1902. That before the completion of the time specified in said notice under the said section a judgment was entered in this action. That affiant refers to the judgment roll and all the papers attached thereto, and makes the same a part of this motion, and will refer to the same upon the argument thereof. Affiant further says: That the said Hon. S. G. Roberts was an alderman during all the said times, and a member of the common council, and that at the time he voted for said resolution, March 3, 1902, he had already appeared in said law-

suit, and filed a written answer for Patrick Devitt, a person interested in the outcome of said suit. That he verified said answer on the 25th day of February, 1902, as attorney for said Patrick Devitt. That he participated in all the proceedings, and signed a stipulation dated on the very day said resolution was introduced into the common council, to wit, March 3, 1902, as appears from the judgment roll; and that on the 4th day of March, 1902, he was present at the taking of testimony in said cause. That since said judgment he has been active in attempting to have the same paid while a member of the common council. That at a special meeting of the common council on the 21st day of April, 1902, said Hon. S. G. Roberts undertook to introduce a resolution authorizing the mayor and common council to make a loan for the payment of said judgment, but, however, said resolution was not passed. That upon the adoption of affiant's report on the 5th day of May said Roberts was present as a member of the common council, and immediately after the reading of said report and opinion by affiant admitted that he had appeared in said action, and claimed that he had a legal right so to do; but when the question of the adoption of said report of said city attorney came up said Roberts asked to be excused from voting. That afterwards his name did not appear upon an application for a peremptory writ of mandamus in these proceedings. Affiant says: That it clearly appears that no appropriation was ever made to.meet this judgment. That, from the affidavit of the city treasurer, there are no funds to pay the same, and that the city is overwhelmed in debt; and further, that the common council have passed a resolution ordering the city attorney to have such judgment vacated and set aside. That it appears on its face that it exceeds the sum of three thousand dollars ($3,000.00), and cannot, therefore, be paid, by virtue of section 2492 of the city charter. That the city council, in affiant's opinion, have no power to make an appropriation to pay said judgment before September, 1902. Affiant further says that he believes the irregularities pointed out with referece to said resolution render said judgment void, and that the city of Fargo would be unable to make any special assessment for the conducting of the street in question, and furthermore, that the appearance of the said S., G. Roberts in said matter, and his participation in the meeting and voting for said resolution, invalidates the same; that affiant makes a part of his affidavit, so far as the facts therein contained are concerned, the affidavit of C. H. Mitchell, city treasurer, and the affidavit of H. J. Gibson, city auditor." The affidavits and exhibits referred to in the affidavit of M. A. Hildreth, so far as the same are deemed important, have already been set out, except that the city records show that there was an appropriation made in September, 1901, of $6,500, for "streets and bridges," and that on May 1, 1902, there was an unexpended balance in said fund of $2,592.76. The order appealed from is as follows: "The above-entitled matter coming on before the court for hearing upon an order to show cause why the judgment heretofore rendered in said action should not be vacated and set aside, M.

A. Hildreth, Esq., city attorney, appearing for the plaintiff in support of said motion, and Messrs. Morrill & Engerud for the defendants, in opposition thereto, the motion was heard upon the following papers, to wit, original order to show cause, dated May 9, 1902; affidavit of M. A. Hildreth; certified copies of the records of the city council of the city of Fargo, under the certificate and seal of H. J. Gibson, city auditor; affidavit of C. H. Mitchell, city treasurer, together with Exhibit A, thereto attached, marked 'Condition of Appropriation,' and Exhibit B, as to form of certificate of indebtedness; the judgment roll in said action; and the affidavit of publication of the resolution of the city council of March 3, 1902, said affidavit being verified April 14, 1902. And now, after hearing the arguments of counsel and due consideration thereof, the court finds that in this matter it is conceded that the resolution of March 3, 1902, voted for by Mr. Roberts, and by which it was sought to bind the adjacent property owners with the cost of the street, was not passed and published in time to affect or be relevant to the matters involved in this suit; that counsel for defendants rely wholly upon the resolution of December 10, 1901, passed during the absence of Mr. Roberts from the council, which, if sustained, throws the entire cost of $5,000 onto the city at large. I am of the opinion, however, from this record, that the old city council supposed it was proceeding under the resolution of March 3, 1902. Upon the entire record, grave doubt arises whether there is sufficient strength to the resolution of December 10, 1901, to bind the city to the payment of the judgment. I am of the opinion that there has been such mistake and inadvertence in this action that in justice to all parties concerned the judgment should be vacated, and set aside, and a new trial granted. Motion costs to be taxed in favor of plaintiff at $10."

In this court counsel upon both sides have devoted a good deal of time to the discussion of the question whether the judgment was or was not fraudulently obtained, and whether the trial court had or had not jurisdiction to enter the judgment. It appears, however, that the trial court did not place its order upon either of these grounds, and, inasmuch as the decision of the case in this court will turn upon another feature of the case, we shall pass over all questions of fraud or want of jurisdiction in the court below. But the record shows that the district court, in vacating the judgment, did so upon the ground that the judgment was entered by mistake and inadvertence. The language of the court is: "I am of the opinion that there has been such mistake and inadvertence in this action that, in justice to all parties concerned, the judgment should be vacated and set aside, and a new trial granted." From this language it conclusively appears that in setting aside its judgment the court did not proceed upon the theory that the court erred in deciding any question of law or fact relating to the merits of the case; but did proceed upon the theory that the judgment had been entered as a result of mistake and inadvertence. This class of actions is governed by the rules of procedure which obtain in civil actions (Rev. Codes 1899, §

5972), and therefore the court below, in deciding the motion to vacate the judgment, had and could lawfully exercise the discretion conferred upon district courts by section 5298 of the Revised Codes. That section provides that said court may, "in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect." This language clearly confers the requisite authority upon the district court, in furtherance of justice, to relieve a party from a judgment in any case where the same was taken against him through "his mistake, inadvertence, surprise of excusable neglect." Therefore the question left for determination is one of fact, viz.: whether the trial court erred in ruling that the judgment in this case was so taken. In deciding this question it should be premised that, where an application to vacate a judgment or order is not based upon irregularities of procedure, but is placed exclusively upon the ground of mistake, surprise, inadvertence, or excusable neglect of the moving party, such application, under the authorities, is an appeal to the favor, and is not in the nature of an application based upon a strict legal right. In such cases the application invokes the sound judicial discretion of the court to which it is addressed, and in all such cases it is well settled that there can be no reversal of the ruling of the court below by a reviewing court, except where the court of review finds that the trial court abused the discretion vested in it by the law. The mere fact that the appellate court does not entirely agree with the court of original jurisdiction in its rulings does not suffice to show a cause of abuse of discretion within the meaning of the authorities. This court had occasion to state and apply this well-established rule of practice in the case of *Manufacturing Co.* v. *Holz,* 10 N. D. 16, 84 N. W. Rep. 581. That was a case where judgment was entered by default against a defendant who subsequently made application to vacate the judgment, and in doing so the defendant submitted affidavits to show that his default was excusable under the facts shown. In that case this court said: "We acquiesce in this proposition of counsel to the extent of holding that the appellants' case does not rest upon any strict legal right, but, on the contrary, does rest upon an appeal to the favor, and is therefore addressed to the judicial discretion of the court below." The statute authorizing the trial court to grant relief as against judgments and orders entered by inadvertence, mistake, or excusable neglect is highly remedial, and has received at the hands of the courts a very liberal construction. See *Buell* v. *Emerich,* 85 Cal. 116, 24 Pac. Rep. 644. As to the distinction between cases which appeal to the favor of the trial court and those where the application is based upon a strict legal right. See *Nichells* v. *Nichells,* 5 N. D. 125, 64 N. W. Rep. 73, 33 L. R. A. 515, 57 Am. St. Rep. 540. See, also, *Garr, Scott & Co.* v. *Spaulding,* 2 N. D. 414, 51 N. W. Rep. 867.

The final question presented is, therefore, whether the vacating

order is one involving an abuse of discretion on the part of the trial court. Unless it is such, this court, under an established rule of practice in this and other courts, cannot disturb the ruling of the court below upon which court the statute, by its terms, devolves a discretion in this class of cases. It is our opinion that the order does not embody an abuse of discretion, and we are led to this conclusion by considerations which inhere in the very nature of the subject-matter involved in the litigation. It appears that the city council deemed it to be necessary to acquire the land in question for a public use, viz., for an improvement to Seventh avenue north. But the acquisiition of the land involved either its purchase by a contract of purchase and sale or a condemnation of the land under the power of eminent domain. The testimony shows that on December 2, 1901, the city attorney advised the city council to the effect that the title could only be acquired by a condemnation proceeding. The grounds of his advice are not stated, but, if it was intended thereby to advise the city council, in substance, that certain obstacles of a legal and financial nature then existed which would prevent the city from buying the land and paying for the same at that time, then we have no hesitancy in saying, upon the existing facts as shown by the testimony, that such advice was sound, and that none other would have been proper under the circumstances. The contemplated improvement of Seventh avenue north was to be costly, and to include a large outlay of money. The first item of such expense would be the amount necessary to be paid for the land itself, which land, it appears, is worth $5,000. If this expense was to be paid out of the city treasury, and from funds derived from the general revenues of the city, the statute required that an appropriation for such improvement should have been embraced as an item in the annual appropriation bill, which bill the statute requires to be enacted by the council in the form of an ordinance. See Rev. Codes 1899, §§ 2262, 2263. Section 2262 declares that such appropriation bill "shall specify the purposes for which such appropriations are made and the amount appropriated for each purpose"; and section 2263, referring to improvements particularly, declares: "and no expenditure for an improvement to be paid for out of the general fund of the corporation shall exceed in any one year the amount provided for such improvement in the annual appropriation bill." The exceptions mentioned in this section have no application to this case. No claim is made that the annual appropriation bill for the fiscal year in question embraced an item which in terms covered the purchase money of the land in question, nor was the contemplated improvement mentioned in terms or at all in the annual appropriation bill. It does appear that said bill embraced an appropriation of $6,500 for "streets and bridges," and the appellant's counsel contend that this item, or so much thereof as was unexpended, was available, and could have been been used in paying for the land in question. But in this construction of the statute we cannot concur. We think the words "streets and bridges," found in the appropriation bill, have reference

only to the usual and ordinary items of expense which are incident to a proper maintenance and preservation of the streets and bridges, within the city. It is clear that the phrase "streets and bridges" does not import or suggest any costly improvement of an unusual and extraordinary character, such as that in question, and which involved buying and paying for an entire addition to the city of Fargo, embracing 14 city lots, worth $5,000. The purpose of the statute is to inform the taxpayers in advance, and before the appropriation bill is finally passed, fully and specifically what items of expense are contemplated, and for which a tax is to be levied. Among the items which may be embraced in the annual bill the statute singles out "improvements." This was clearly done to make appropriations, at least for large and costly improvements, separate items, to stand upon their independent merits. See, upon this point, *Engstad* v. *Dinnie,* 8 N. D. 1, 76 N. W. Rep. 292. In that case the court said: "The statute differentiates improvements from ordinary expenses, and places them in a class by themselves." It appears, therefore, that on December 10, 1901, and on March 3, 1902, there was no fund in the city treasury out of which the land could have been lawfully paid for .

But it is also our opinion, upon this record, that the city council did not at any time in question contemplate paying for this land out of the general revenues of the city. The very terms of both of the resolutions adopted by the council point to a contrary conclusion. The resolutions are above set out, and the important language in each is as follows: That of December 10, 1901, declares: "That it is necessary to the well-being of said city and the citizens thereof and particularly to those people who live along and adjacent to Seventh avenue north, that the said Seventh avenue be opened its full width as a street." The language of the resolution of March 3, 1902, is: "Be it resolved by the mayor and common council of the city of Fargo that it is necessary and essential to the well-being and growth of said city, and particularly to the persons residing along Seventh avenue north and adjacent thereto, that said Seventh avenue, which is now only forty feet in width, be opened and widened forty feet more." These resolutions were both before the referees in this action. That first adopted was set out in the complaint, and admitted in the answers, and that of March 3d was offered by the city attorney, and received in evidence without objection. We discover no essential differences in the terms of these resolutions; but it appears that the former was never published, and that the latter was published for four weeks in the official newspaper of the city, but such publication did not begin until the next day after the entry of judgment in this action. As has been suggested, the terms of these resolutions lead to the conclusions that the city council at no time contemplated paying for the land in question out of the general fund of the city. On the contrary, it is quite evident from their language that the resolutions were framed with express reference to the re-

quirements of section 2279 of the Revised Codes, which section
governs in all cases where the expense of a contemplated street
improvement is to be met by a special assessment to be made upon
adjoining property. In a case where a special assessment is to be
levied, this section provides that: "The city council shall, by resolu-
tion, declare such work or improvement necessary to be done, and
such resolution shall be published for four consecutive weeks at least
once a week in the official newspaper of the city." We find no
other provision of the statute, and none has been cited, which re-
quires the city council to pass any similar resolution in a case where
the expense of a contemplated street improvement is to be paid out
of the general fund in the city treasury. Any such resolution, there-
fore, would be superfluous, and of no binding force, where the ex-
pense of a proposed improvement is to be met out of our funds
raised by general taxation. Nevertheless, the city attorney did not
delay the institution of this action until the resolution of December
10th could be published, nor until taxpayers owning adjoining prop-
erty to be specially assessed were offered an opportunity to file with
the city auditor a written protest against the improvement pro-
posed, as such taxpayers would have had a right to do, under the
provisions of section 2279, if the resolution had been published as
required by that section. It is further true that the complaint in
this action does not contemplate any assessment as against the owners
of the adjoining land, who are the parties which the resolution de-
clares are particularly concerned in the proposed improvement; nor
did the court, by its judgment, assess the damages or apportion the
cost of the improvement as between those particularly interested in
the street improvement in manner and form as provided by section
2454, Rev. Codes 1899.

Finally, the fact stands out clearly that this action was prematurely
brought, in this: that it was instituted by the city attorney before the
taxpayers especially interested in the improvement had an opportun-
ity to file a protest against the improvement so proposed and declared
to be necessary by the council. It is equally plain that the trial court
omitted, in entering its judgment, to assess the damages as between
the taxpayers particularly interested, viz., those who, under the
theory of the resolutions of the council, would be required to pay
the damages arising from the condemnation of the land for street
purposes. That the action was prematurely commenced, and the
judgment entered by inadvertence and mistake, is, therefore, obvious.
The council did not authorize the institution of any action in which
it would be legally possible to enter a judgment in a lump sum to be
paid out of the city's funds. On the contrary, the tenor and purport
of its resolutions point only to a judgment requiring a special assess-
ment as against parties particularly interested in the improvement
to be made. It was, therefore, either a mistake or inadvertence or
both to ask for and to obtain the judgment actually entered. Nor
could this judgment, in our opinion, ever be collected by any legal

process whatever. It is not the policy or the province of courts to compel the payment of judgments which are entered by mistake and inadvertence, and which, if paid, would involve the disbursement of public funds in direct violation of positive provisions of the statute. The order setting aside the judgment was, therefore, a proper order, and manifestly was not an abuse of discretion.

But the motion costs,—$10,—imposed upon the defendants as terms, is clearly an error. The city was at fault, and by its motion to vacate the judgment upon the grounds of its mistake or inadvertence the city appealed to the favor of the trial court. It might have been just to impose terms as against the city as a condition of granting the favor asked of the trial court. The judgment having been regularly entered in due course, and in accordance with the practice of the district court in such cases, and entered by a court having jurisdiction, the application to vacate the same was clearly an appeal to the favor.

The order appealed from is sustained, except as to the item of motion costs. All the judges concurring.