## ELLEN CLINE v. MARGARET DUFFY.

### (129 N. W. 75.)

**Judgment — Vacating Default Judgment — Discretion of Court.**

    1. An application to vacate a default judgment or order not based upon irregularities of procedure, but exclusively upon the statutory grounds of "mistake, inadvertence, surprise, or excusable neglect" of the moving party, is an appeal to the favor and not in the nature of an application based upon a strict legal right. Such an application invokes the sound judicial discretion of the court to which it is addressed. The supreme court will, however, reverse the lower court's ruling where it clearly appears that the trial court abused the discretion vested in it by statute.

**Judgment — Vacating Default Judgment — Diligence — Discretion of Court — Burden of Proof.**

    2. Persons applying for relief from default judgments, upon the ground of "mistake, inadvertence, surprise, or excusable neglect" have the burden of

Note.—The right to vacation of a judgment on account of negligence or mistake of attorney is considered, with a review of the authorities, in 96 Am. St. Rep. 108; and the question whether neglect of counsel is to be imputed to party under a statute providing for relief from judgment taken by mistake, inadvertence, surprise, or excusable neglect is the subject of a note in 27 L.R.A.(N.S.) 858.

showing diligence, and unless it is shown affirmatively the court will not ordinarily exercise its discretion in their favor. The applicant must not only show facts excusing the default on his part, and that he has a meritorious defense, but he must also show proper diligence in prosecuting his remedy. He must make his application with due diligence after receiving notice or knowledge of the default.

Applying the above rules to the facts herein, *held*, that it was an abuse of discretion to deny appellant's motion to be relieved from the default judgment rendered against her.

Opinion filed December 1, 1910. Rehearing denied December 22, 1910.

Appeal from District Court, Ramsey county; *John F. Cowan*, J.
Appeal from an order refusing to vacate a judgment by default.
Reversed.

*Flynn & Traynor* (*Guy C. H. Corliss*, of counsel), for appellant.
Motion was made with sufficient promptness. Minnesota Thresher Mfg. Co. v. Holz, 10 N. D. 16, 84 N. W. 581; Wheeler v. Castor, 11 N. D. 347, 61 L.R.A. 746, 92 N. W. 381; Bloor v. Smith, 112 Wis. 340, 87 N. W. 870; Searles v. Christensen, 5 S. D. 650, 60 N. W. 29.

There was no negligence on the part of attorneys to warrant denial of motion. Whereatt v. Ellis, 70 Wis. 207, 5 Am. St. Rep. 164, 35 N. W. 314; 23 Cyc. Law & Proc. p. 942; Merchants' Bank v. Mills, 3 E. D. Smith, 210.

*Burke, Middaugh, & Cuthbert*, for respondent.
Negligence of attorney is imputable to his client. 23 Cyc. Law & Proc. p. 939; Williamson v. Cummings Rock Drill Co. 95 Cal. 652, 30 Pac. 762; Shearman v. Jorgensen, 106 Cal. 483, 39 Pac. 863; Sanborn, V. & Co. v. Centralia Furniture Mfg. Co. 5 Wash. 150, 31 Pac. 466.

### Statement of Facts.

This is an appeal from an order denying defendant's motion to be relieved from a default judgment taken against her for want of an answer or appearance, and for leave to answer and defend upon the merits. The record discloses that such default judgment was entered December 30, 1907, and that on August 12, 1908, defendant, by her attorneys, caused notice of motion to vacate the judgment to be served on

plaintiff's attorneys, the motion being returnable August 22d. The motion was finally submitted to the trial court on October 16, 1908, and on May 24, 1909, the order complained of was made. Numerous errors are assigned upon such order.

In addition to the files and records in the case and a proposed verified answer, the moving papers submitted to the trial court in support of the motion to vacate the judgment consisted of the affidavits of M. W. Duffy, Margaret Duffy (the defendant), M. H. Brennan, and Henry M. Gray, and also affidavits of certain persons engaged in the real-estate business at Devils Lake, which latter affidavits merely tend to show that the damages assessed in the judgment are excessive.

In order that there may be a clear understanding of the showing made in the court below upon the questions relative to the principal basis of the motion, to wit, "that such default judgment was taken against the defendant through her mistake, inadvertence, surprise, and excusable neglect," we deem it necessary to set forth in full the affidavits in so far as they relate to such ground. The affidavit of M. W. Duffy is as follows:

"M. W. Duffy, being first duly sworn, deposes and says that he is the son of the defendant, Margaret Duffy, in the above-entitled action; that ever since the death of his father, Maurice Duffy, in 1898, he has conducted practically all business for the said defendant, and has at all times been quite familiar with the facts relative to the matters involved in the action above entitled; that on or about the 19th day of April, 1907, under instructions from the defendant, he delivered to Brennan & Gray, attorneys in Devils Lake, North Dakota, at their office in said city, the summons and complaint in the above-entitled action, and then and there employed the said attorneys to make appearance and to defend the said action on behalf of the said defendant; that at said time he talked over the facts of the case with M. H. Brennan, one of the members of said firm of attorneys, who had also been and was still one of the attorneys in charge of the probating of the estate of Maurice Duffy, deceased, and with whom affiant had at times previous to the commencement of this action talked regarding the matters in controversy herein, and left the matter to be defended by said attorneys for defendant; affiant at all times thereafter until on or about the 9th day of July, 1908, fully believed that

an answer or other competent pleading had been served in said action and that the same was pending for trial in this court; that as affiant recollects, the jury for the June term, 1907, of this court had not been called up to October, 1907, and affiant thought that to be the reason same did not come on for trial; that in October, 1907, affiant moved to Stanley, North Dakota, and from time to time thereafter wrote to said attorneys relative to said case, and in January, 1908, received a letter from Henry M. Gray, one of the attorneys for defendant, that same would not be tried before the June, 1908, term of said court; that early in June, 1908, affiant wrote again to said attorneys as to when said cause should be tried, and, receiving no reply, came to Devils Lake on July 8th or 9th, and then for the first time discovered that no appearance had been made in said case on behalf of the defendant, and that judgment had been entered against the defendant by default; that as soon as possible thereafter, consistent with the business of affiant at that time in Devils Lake, he returned to Stanley, North Dakota, on July 20th, and then notified his mother, the defendant herein, of said judgment; that on or about the 8th or 9th day of July, after discovering said judgment, affiant also learned that execution had been issued on said judgment and had been placed in the hands of the sheriff of said county, and affiant thereupon consulted with Fred J. Traynor, an attorney of the firm of Anderson & Traynor at Devils Lake, North Dakota, and was advised by him that it would be necessary for the defendant personally to come to Devils Lake and talk with her attorney personally before proceedings could be taken to vacate the judgment, but that it would be time enough if she came within three weeks or thereabouts; that he so informed the defendant on or about July 20th, 1908; that on the 19th day of April, 1907, there was served on the said defendant, Margaret Duffy, as well as on this affiant, summons and complaint in another action in this court in which the said Ellen Cline was plaintiff, and Margaret Duffy, Maggie Cline, Matthew Duffy, Willie Duffy, Winnie Duffy, Nina Duffy, and Clyde Duffy, and John W. Mahar were named as defendants, and on said day and at the said time as he delivered the summons and complaint in the case of Ellen Cline v. Margaret Duffy to said attorneys, he also delivered the summons and complaint in this second action, and employed said attor-

neys to act for the defendants in both actions, and affiant is informed by said attorneys that in the second-mentioned case a demurrer to the complaint has been served and said case is pending on said demurrer, but said attorneys inform affiant that they have no recollection of having received the papers in the case now sought to be opened, and that their files in this case are lost and cannot be found, and stated to this affiant that they did not know of the existence of this action until on or about the month of July, 1908."

Defendant's affidavit follows:

"Margaret Duffy, being first duly sworn, deposes and says that she is the defendant named in the above-entitled action; that she is informed that on the 30th day of December, 1907, judgment by default in the above-entitled action was entered against her in the above-named court for the sum of $761.90 damages and $14.90 costs, making a total judgment of $776.80, and the same entered in judgment book No. 4, at page 146, in the office of the clerk of said court. That affiant did not know anything about the entry of said judgment until on or about the 20th day of July, 1908, and before said time had no intimation whatsoever that the said action had gone to judgment; that the summons and complaint herein were served on affiant on or about the 19th day of April, 1907, and that on the same day and date as said papers were served affiant sent her son, M. W. Duffy, with said papers to the office of Brennan & Gray, attorneys at Devils Lake, North Dakota, and instructed him to employ said Brennan & Gray as attorneys to appear for the defendant in this action, and to answer and defend the same for her, and to protect her rights therein; that thereafter said M. W. Duffy informed affiant that he had delivered said papers to said Brennan & Gray, and had employed them to make appearance and answer for defendant within the time required by law; that said M. W. Duffy had done practically all of affiant's business since the death of the husband and father, Maurice Duffy, and was familiar with the facts relating to said case, and M. H. Brennan, a member of said law firm of attorneys, was then and still is attorney for the estate of Maurice Duffy, deceased, and he too was familiar with the circumstances involved in said action, and defendant did not deem it necessary, therefore, to go personally to said attorney's office to state the facts of said case and depended upon her said son and

said attorneys to protect her rights therein; that from time to time up to October, 1907, affiant had her said son call upon said attorneys relative to said case, and at no time did she have any intimation that said case had not been answered; that in October, 1907, she removed her residence from Ramsey county to Stanley, North Dakota, a distance of about 174 miles, but from time to time caused her said son to write to said attorneys relative to the time of trial of said cause, and in January, 1908, said M. W. Duffy received a letter from Henry M. Gray, one of the members of said firm of attorneys, that said case would not come on for trial until the June, 1908, term of court; that at all time after the 19th day of April, 1907, until on or about July 20th, 1908, this affiant believed that her rights were being and had been duly protected by answer or other competent appearance; and always intended to defend against said action; that in the month of July, 1908, she sent her said son from Stanley, North Dakota, to Devils Lake to ascertain when said cause would be tried, and it was upon his return on or about July 20th, 1908, that she received her first intimation that said cause had gone to judgment by default, and that no appearance in same had been made on the behalf of the defendant; that as soon thereafter as she could possibly arrange to leave for Devils Lake she did so, and on or about August 5th made appointment with Fred J. Traynor, an attorney at Devils Lake, North Dakota, for Friday, August 7th, to interview him as to her rights in said matter; that on the 7th day of August, 1908, she engaged Anderson & Traynor, attorneys at Devils Lake, to take proceedings to have said judgment vacated and permission granted to defend therein, and on said day and date made a full and complete statement of all the facts and circumstances of this case within her knowledge to her said attorney, Fred J. Traynor, one of the members of said firm, and after having fully disclosed to said attorney all the facts and circumstances of the case as aforesaid, affiant is informed and advised by her said attorney, and affiant does verily believe it to be true, that she has a good and substantial defense to said action on the merits, such as will result in the dismissal of the plaintiff's action, and judgment in favor of defendant upon a trial of the merits thereof.

"Wherefore defendant prays that the judgment may be vacated

and set aside and defendant allowed to serve and file her answer hereto attached, and to defend therein."

The affidavit of M. H. Brennan and Henry M. Gray is as follows:

"M. H. Brennan and Henry M. Gray, being first duly sworn, each for himself deposes and says that he was a member of the former firm of attorneys of Brennan & Gray, at Devils Lake, North Dakota; that he has no recollection whatever of having seen the summons and complaint in the action of Ellen Cline v. Margaret Duffy, and did not know that there was such an action in existence until he learned of the judgment therein sometime about the month of July, 1908; that he is familiar with a certain case of Ellen Cline v. Margaret Duffy, Maggie Cline, Matthew Duffy, Willie Duffy, Winnie Duffy, Nina Duffy, Clyde Duffy, and John W. Mahar, and that the firm of Brennan & Gray are attorneys therein and in *due time served a demurrer to the complaint in said case, and the said case is still pending on said demurrer;* that affiant has at all times until the discovery of said judgment thought that the said action above mentioned, in which demurrer was served, was the only action between said parties, Ellen Cline and Margaret Duffy, pending or in which papers had been served; that if the summons and complaint in the action of Ellen Cline v. Margaret Duffy were delivered at our office or to either of us, the same are lost and cannot be found; that he has searched in his said office and among the files of the firm, and, after diligent search, has been unable to find any trace of any papers in said action, and if said case was ever intrusted to the firm of Brennan & Gray the same has been inadvertently overlooked."

In opposition to the motion, plaintiff submitted the affidavit of Henry G. Middaugh as follows:

"I, Henry G. Middaugh, being first duly sworn say: That I am one of the attorneys for the plaintiff in the above-entitled action. After said action was commenced I had several interviews with one of the sons of the defendant with reference to a settlement in said action and another action involving another tract of land, brought by Ellen Cline against Margaret Duffy and her children; that there were quite a number of interviews, and the only question involved was the amount that the defendant should pay to effect a settlement with the plaintiff. The plaintiff resides in Chicago, Illinois, as I am advised, and my

dealings and the dealings of the plaintiff's attorney with her have been through correspondence with attorneys in Chicago. Under date of December 23d, 1907, the attorneys in Chicago for the plaintiff advised plaintiff's attorneys here that one of the defendant's sons had asked the plaintiff to forward a quitclaim deed, so that the settlement which was then in the process of negotiation could be carried out, and after receiving the quitclaim deed from the plaintiff the plaintiff's attorneys here and under date of January 18th, 1908, addressed a letter to Brennan & Gray at Devils Lake, North Dakota, containing the plaintiff's proposition of settlement, which letter was duly mailed to said Brennan & Gray at Devils Lake, North Dakota, and which letter was as follows:

" 'With reference to the Ellen M. Cline matter, we have authority to settle the whole matter for $750 if closed up at once. On settlement your clients will be entitled to the following papers: (a) A release executed by Ellen M. Cline releasing Margaret Duffy individually and as administratrix from all claims and demands. (b) A quitclaim deed from Ellen M. Cline, widow, to Margaret Duffy, widow, covering the W. ½ of the S. W. ¼ of 22 and the W. ½ of the N. W. ¼ of 27–156–63. (c) A stipulation signed by us on behalf of the plaintiff and yourselves on behalf of the defendants in the case of Ellen Cline against Margaret Duffy, Maggie Cline, Matthew Duffy, Willie Duffy, Winnie Duffy, Nina Duffy, Clyde Duffy, and John W. Maher, involving the W. ½ of the S. W. ¼ of 22 and the W. ½ of the N. W. ¼ of 27–156–63, dismissing the action with prejudice, but without costs to either party as against the other. (d) A release of the *lis pendens* filed in the action last above described. (e) A satisfaction of the judgment entered in the case of Ellen Cline v. Margaret Duffy, which was recovered for the sale by the defendant of the W. ½ of the N. W. ¼ and the N. ½ of the S. W. ¼ of 33–156–63, in the manner not authorized by the Probate Code, that being the Jacob Wolfe quarter.

" 'Yours truly, Burke, Middaugh, & Cuthbert.'

"Not hearing from Brennan & Gray, the attorneys for the defendant, with reference to said matter, I did afterwards speak to Mr. Gray, one of the attorneys for the defendant, about it. I supposed that he knew about the judgment in the above-entitled action at all

times after it was entered, and I know that he knew about it after the plaintiff's attorneys addressed to him the letter of January 18th, which is above set forth, which specifically refers to the judgment in the above-entitled action.

"Again and under date of March 31st, 1908, the plaintiff's attorneys wrote to Brennan & Gray, the attorneys for the defendant, a letter of which the following is a copy:

" 'The attorneys in Chicago for Ellen Cline are urging us to take some action in the Margaret Duffy matter. Some time ago we wrote you that we would accept $750 in settlement of the whole matter. If this is not closed up at once, we will have to issue execution on the judgment against Margaret Duffy. Please advise us.

" 'Yours truly, Burke, Middaugh & Cuthbert.'

"Afterwards and on June 15th, 1908, the plaintiff's attorneys caused an execution to be issued on the judgment in the above-entitled action, and delivered to the sheriff of Ramsey county. Thereafter and on or about the 9th day of July, 1908, one of the sons of the defendant, in company with Mr. Fred J. Traynor, called upon the plaintiff's attorney, and wanted to know as to the prospect of a settlement, and at that time the plaintiff's attorneys exhibited to said son and to said Fred J. Traynor the copy of said letter of January 18th, 1908, addressed to Brennan & Gray and containing the plaintiff's offer of settlement, and, in answer to the inquiry of Mr. Traynor if that was the best settlement that the plaintiff's attorneys could make, I told him that we would take the responsibility of settling at that time if they desired to settle promptly for the sum of $700, which would include the amount that was to go to the plaintiff and the amount of her attorneys' fees, and the son of the defendant and Mr. Traynor said they would take the matter under consideration.

"I have examined the records in the office of the register of deeds of Ramsey county, North Dakota, and I find that on the date on which the defendant, Margaret Duffy, verified her affidavit in the application to vacate the judgment in the above-entitled action, there was recorded in the office of the register of deeds of Ramsey county, North Dakota, a warranty deed bearing the date on that day, recorded in book 21 of deeds, at page 511, reciting a consideration of $1.00 and other valuable consideration, whereby the defendant did grant to

Maurice V. Duffy those certain premises situated in the county of Ramsey and state of North Dakota, and known and described as the S. E. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of section 19 and the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 19 in township 157 in range 62 west; that said deed appears to have been acknowledged on August 12th, 1908, before Fred J. Traynor, notary public, and to have been witnessed by Fred J. Traynor and M. H. Brennan."

In reply defendant submitted the affidavits of M. H. Brennan and Henry M. Gray as follows:

"M. H. Brennan, being first duly sworn, deposes and says that he has read the affidavit of Henry G. Middaugh in the above-entitled matter; that deponent never received the letter alleged to have been dated January 18th, 1908, which said Middaugh alleges was addressed to Brennan & Gray, and that he never saw or heard of said letter or any of its terms until he read the affidavit of said Middaugh; that between April, 1907, and March 16th, 1908, he met and talked frequently with said Middaugh at the United States Land Office and other places, and at no time did said Middaugh intimate to deponent that any judgment had been taken in said action or that any proposition of settlement had been mailed or submitted, or any letter not answered in said matter; that from April 1st, 1907, until March 16th, 1908, he was Register of the United States Land Office, the duties of which involved numerous details requiring constant attention, and that during said time he did very little practice at law, but left pending business to the care of H. M. Gray, and whether the summons and complaint in this case was left in the office, or, if left, destroyed on the mistaken impression it was a duplicate, owing to the number of defendants, deponent cannot now recall; that deponent is certain, however, that there was no intention of letting the matters involved go by default, as the same were discussed with said Gray, and the points supposed to be involved, particularly the question of jurisdiction of the subject-matter, the estate not having been closed, were talked over between himself and said Gray, and demurrer advised; that an inspection of the complaint in this case and that in the case of Ellen Cline v. Margaret Duffy, Maggie Cline, Matthew Duffy, Willie Duffy, Winnie Duffy, Nina Duffy, Clyde Duffy, and John W. Mahar, which is hereto attached marked Exhibit "A," shows that the first paragraph in each

complaint is almost identical with the exception that there is a different description of real estate involved; that the last-named case also makes allegations to the effect that Margaret .Duffy as administratrix of the estate of Maurice Duffy, deceased, had wrongfully made disposition to her own benefit of the land therein described; that among other things the demurrer served in that case alleges that the complaint does not state facts sufficient to constitute a cause of action, and that the court has no jurisdiction of the subject of the action nor of the persons of the defendants; and the failure to answer or demur in the case at bar against Margaret Duffy (sole defendant) was due to inadvertence."

"Henry M. Gray, being first duly sworn, deposes and says that he has read the affidavit of Henry G. Middaugh in the above-entitled matter; that to the best of his knowledge and belief the letter of January 18th, 1908, which said Middaugh alleges he sent to Brennan & Gray, was never received by affiant; that during the year 1908 affiant had a talk with said Middaugh regarding settlement in the Cline-Duffy matter, but said Middaugh did not mention any judgment, and affiant did not in fact know there was any such judgment until some time after the 31st of March, 1908; that at said conversation with said Middaugh the matter under discussion was a settlement by which said Middaugh should obtain from said Ellen Cline quitclaim deed to her alleged interest in the land involved in the case of Ellen Cline v. Margaret Duffy, Maggie Cline, Matthew Duffy, Willie Duffy, Winnie Duffy, Nina Duffy, Clyde Duffy, and John W. Maher; that some time in the spring of 1908 affiant did receive a letter from said Middaugh containing the statements as set forth in said Middaugh's affidavit, as being of date March 31st, 1908, but knowing that a demurrer had been served in the case, the title of which is given just above, and not knowing of any other case between these parties, thought the communication referred to said case, and knowing no judgment could have been entered therein, the demurrer being still pending, set it aside temporarily pending the negotiations for settlement, until some considerable time thereafter, in looking over the records in the office of the clerk of court, he discovered the judgment now sought to be opened up; that affiant was not present on the 19th day of April, 1907, when M. W. Duffy was at the office of M. H. Brennan, and knew nothing of any case be-

tween these parties until Mr. Brennan turned over to affiant a certain envelope containing the papers therein, and the only papers therein were the summons and complaint in the case of Ellen Cline v. Margaret Duffy, Maggie Cline, Matthew Duffy, Willie Duffy, Winnie Duffy, Nina Duffy, Clyde Duffy, and John W. Maher, and these were the only papers involving any case between Ellen Cline and Margaret Duffy that ever came into affiant's hands or attention until the discovery of this judgment, and until after the 31st day of March, 1908, some time, affiant never knew and never suspected that there was in existence any other case between these parties than the one of Ellen Cline v. Margaret Duffy, Maggie Cline, Matthew Duffy, Willie Duffy, Winnie Duffy, Nina Duffy, Clyde Duffy, and John W. Maher."

Fisk, J. (after stating the facts as above). In the light of the above facts and showing, we are required to review the action of the trial judge in denying defendant's application, and we must do this in accordance with well-settled rules repeatedly announced by this court in prior decisions, a brief reference to which will be here made. In Fargo v. Keeney, 11 N. D. 484, 92 N. W. 836, Mr. Chief Justice Wallin, in speaking of the scope of the review by this court, of orders such as this, said, in referring to § 5298 of the Codes which is § 6884, Rev. Codes 1905: "That section provides that said court may, 'in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect.' This language clearly confers the requisite authority upon the district court, in furtherance of justice, to relieve a party from a judgment in any case where the same was taken against him through 'his mistake, inadvertence, surprise, or excusable neglect.' Therefore the question left for determination is one of fact, *viz.,* whether the trial court erred in ruling that the judgment in this case was so taken. In deciding this question it should be premised that, where an application to vacate a judgment or order is not based upon irregularities of procedure, but is placed exclusively upon the ground of mistake, surprise, inadvertence, or excusable neglect of the moving party, such application under the authorities is an appeal to the favor, and is not in the nature of an application based upon a

strict legal right. In such cases the application invokes the sound judicial discretion of the court to which it is addressed, and in all such cases it is well settled that there can be no reversal of the ruling of the court below by a reviewing court, except where the court of review finds that the trial court abused the discretion vested in it by the law. The mere fact that the appellate court does not entirely agree with the court of original jurisdiction in its rulings does not suffice to show a case of abuse of discretion within the meaning of the authorities. [Citing and quoting from Minnesota Thresher Mfg. Co. v. Holz, 10 N. D. 16, 84 N. W. 581.] . . . The final question presented is, therefore, whether the vacating order is one involving an abuse of discretion on the part of the trial court. Unless it is such, this court, under an established rule of practice in this and other courts, cannot disturb the ruling of the court below upon which court the statute by its terms devolves a discretion in this class of cases."

In Keeney v. Fargo, 14 N. D. 419, 105 N. W. 92, the present chief justice of this court, among other things, said: "Courts have a wide discretion relating to granting or withholding relief in such cases, which will not be disturbed, except on a showing of an abuse of discretion. Nichells v. Nichells, 5 N. D. 125, 33 L.R.A. 515, 57 Am. St. Rep. 540, 64 N. W. 73; Smith v. Wilson, 87 Wis. 14, 57 N. W. 1115."

This court has very recently had occasion to give expression of its views upon the rule above referred to. Citizens' Nat. Bank v. Branden, 19 N. D. 489, 27 L.R.A.(N.S.) 858, 126 N. W. 102. Among other things it was there said: "A general rule having unanimous support seems to be that if the moving party makes a clear and unquestionable showing that he has a good defense or cause of action on the merits, of the benefit of which he has been deprived without fault on his part, the trial court cannot, in the exercise of a sound judicial discretion, deny him the relief prayed for, and if it has done so its action will be reversed. On the point, however, of what constitutes fault on the part of the moving party and what may be said to constitute surprise, mistake, inadvertence, and excusable neglect, the cases are in irreconcilable conflict." Under the facts in that case it was held that the defendant was in no manner guilty of a lack of due care and diligence, and that it was solely through the inadvertence and ex-

cusable neglect of counsel that the default was occasioned. There is nothing therein stated which conflicts with or in any manner changes or modifies the well-settled rule announced by the prior decisions.

Another rule equally well settled is that there must not only be diligence in preventing a default, but there must be diligence in making the application to be relieved from such default after notice thereof. "It is well settled in cases of this kind, that the moving party has the burden of showing diligence, and, unless it is shown affirmatively, the court will not ordinarily exercise its discretion in his favor." Wheeler v. Castor, 11 N. D. 347, 61 L.R.A. 746, 92 N. W. 381, citing St. Paul Land Co. v. Dayton, 39 Minn. 315, 40 N. W. 66; Gerish v. Johnson, 5 Minn. 23, Gil. 10. The court there expressly approved the rule announced in 6 Enc. Pl. & Pr. p. 189 as follows: "It is not sufficient for the applicant to show a case within the statute of relief and a good defense on the merits. He must also show proper diligence in prosecuting his remedy." See also Keeney v. Fargo, 14 N. D. 423, 105 N. W. 93. The contention that, if the application is made within a year after notice of the default, it is in time, notwithstanding the applicant fails to use diligence in applying for the relief, is contrary to the express holdings of this court. Such prior decisions are clearly sound and merit our unqualified approval.

It is our plain duty, therefore, not to interfere with the exercise by the trial judge of the discretion vested in him, unless we are able to say, from the showing made, that there was a clear and manifest abuse of such discretion. The burden was upon the applicant to affirmatively show diligence prior to the default, and also to show such diligence after the default in seeking relief therefrom, or he must show facts excusing the exercise of such diligence. A failure to make such showing will ordinarily not only justify, but require, the court to exercise its discretion in denying the application. Tested by these rules we are required to determine from the facts whether the trial judge abused his discretion in denying appellant's motion.

Upon the former hearing a majority of the court arrived at a conclusion adverse to appellant's contention. Upon a rehearing and reargument of the case, we have reached an opposite conclusion. More mature deliberation has served to convince us that, under the showing, appellant cannot rightfully be charged with any degree of negligence

in suffering such default to be taken, nor can she rightfully be charged with a lack of due diligence after acquiring knowledge of such default, in asking to be relieved therefrom. Upon being served with the summons and complaint, she promptly took steps through her son, M. W. Duffy, for the purpose of employing counsel to appear and defend such action. There is no reason to believe that, in so doing, she and her son did not act in the utmost good faith, believing that they had done everything necessary and requisite to protect her legal rights. It is, we think, equally plain that the firm of Brennan & Gray, whom she supposed that she had employed to appear for her therein, through a misunderstanding of fact, caused, no doubt, by reason of there being two cases instead of but one, as they apparently, through inadvertence, believed,—did not know that there were two cases in which they were expected to appear and answer. The fact that the members of such firm did not understand that they were employed in the case at bar is established beyond peradventure by their affidavits as well as by their conduct, which is strongly corroborative thereof. Had they believed or suspected that there were two cases, instead of one, it is inconceivable that they would have appeared in but one case. "But it is strenuously argued by respondent's counsel that, if Brennan & Gray were not made to understand that they were retained in both cases, this is indisputable proof of inexcusable neglect on appellant's part, or on the part of her agent, M. W. Duffy. In other words, that either Mrs. Duffy or Brennan & Gray are guilty of inexcusable neglect, and that, taking either horn of the dilemma, no relief can be given her. We are unable to concur in this view of the situation. Owing to an evident misunderstanding, Brennan & Gray were not in fact employed in the case at bar. The contractual relation of attorney and client never existed between them, for the obvious reason that the minds of the parties never met." This being true, the cause of the misunderstanding is immaterial, provided appellant was in no respect to blame therefor. That she acted as a reasonably prudent person would have acted, and that she, in good faith, believed and relied upon the belief that she had retained Brennan & Gray, and entertaining such belief suffered the default to be taken against her, is, we think, fairly established. And that she learned nothing to the contrary until the month of July, 1908, is equally plain from the record. It therefore

follows that notice to Brennan & Gray of such default (conceding that they received such notice) was not imputable to appellant, so as to charge her with the lack of diligence in making application to be relieved therefrom. After acquiring actual knowledge of such default, she promptly moved to vacate the same. In the light of these facts we feel compelled to hold that the learned trial court, in making the order complained of, abused the discretion vested in him.

The order appealed from is accordingly reversed, but the judgment will be permitted to stand as security for any judgment that plaintiff may finally recover.

All concur, except MORGAN, Ch. J., dissenting.

MORGAN, Ch. J. I cannot concur in the conclusion reached by the court. On the facts recited in the majority opinion I think that there was a contract of employment and no misunderstanding as to the fact that there were two suits. There was neglect that has not been excused in not answering or demurring in time, and therefore clearly no abuse of discretion in refusing to set aside the default judgment.