H. E. ENGLISH, doing business as ENGLISH DRILL-
ING COMPANY, and as H. O. ENGLISH OIL
COMPANY, and LEONARD A. WOEPPEL, for
themselves and numerous other parties,

*Plaintiffs and Respondents,*

vs.

GEORGE LACEY SMITH, also known as GEO. LACY
SMITH and also known as GEO. LACEY SMITH,

*Defendant and Appellant.*

(No. 2514; February 17th, 1953; 253 Pac. (2d) 857)

4

For the defendant and appellant the cause was submitted upon the brief and also oral argument of Thomas O. Miller of Lusk, Wyoming and Edward S. Halsey of Newcastle, Wyoming.

For the plaintiffs and respondents the cause was submitted upon the brief of Thos. A. Nicholas of Casper, Wyoming.

## OPINION

HARKINS, District Judge.

This proceeding was heretofore submitted to the court on the briefs of the parties, and oral argument of the appellant. The result was a dismissal of the appeal because the final certificate of the Clerk of the District Court was not made until after the expiration of

the time for preparing and filing the record on appeal in the District Court. For former opinion see 70 Wyo. 50, 244 P. (2d) 807.

Appellant has filed a petition herein claiming that the record was in fact filed in the District Court on January 4, 1951. This petition is supported by the affidavit of the Clerk of the latter Court wherein she states that the record was so filed. It also appears from said affidavit that immediately after filing the record the clerk, as required by Statute, notified the District Judge of the filing thereof, and that the Judge returned the notice to her office on January 9, 1951. Attached to this affidavit as an exhibit is a photostatic copy of the "Notice of Filing Record on Appeal", dated January 4, 1951, and which according to the Clerk's endorsement thereon was filed January 9, 1951. A portion of the affidavit aforesaid relates to and sets out in full a photostatic copy of a letter, under date of January 5, 1951, addressed to counsel for appellant, bearing the signature of the Clerk, in which she states that: "I received the Record on Appeal and other papers which Mr. Simmons brought into the office yesterday. I handed the Notice of Filing Record on Appeal to Judge Ilsley today. It was dated January 4th, since it was filed here yesterday." Other corroborating exhibits are attached to this affidavit. In addition to the petition appellant filed a motion requesting that we order the record back to the Clerk of Court directing her "to show the date that the record on appeal was filed in her office * * * or correct the date of her certificate on page 143 of the Record on Appeal now filed * * * from the incorrect date of the 15th day of January, 1951, to the correct date of the 4th day of January, 1951, or, in the alternative, that this Court make its order correcting the date of said certificate to read the 4th day of January, 1951." Copies of this petition and motion, together with the exhibits, were forwarded to Counsel

for respondents, but no objection thereto has been made herein.

The petition and motion, in effect, request that the record be amended, and that the cause be reinstated. Taking the petition and motion as true—as we must, since there has been no objection thereto—it appears that the record did not, at the time of our former opinion, show the true situation respecting the date of the Clerk's certificate and the time of filing the record in the District Court.

While it is true that it is counsel's responsibility to see that the record is properly made up and perfected, and that applications to amend should ordinarily come before disposition of the appeal, we are not unmindful of the fact that appellant acted promptly upon discovery of the defect. It may be that he should have discovered it sooner, but as has been pointed out the cause was submitted on argument and briefs, and no question was raised concerning the jurisdiction of the Court or the sufficiency of the record. It was after the case had been submitted and consideration thereof undertaken by us that the jurisdictional question was discovered. The mistake here appears to be in the date— perhaps a typographical error—and it is a well known fact that such a mistake easily escapes attention. No doubt, had respondent moved to dismiss the appeal for lack of jurisdiction, the appellant would then have moved to amend, and under such circumstances we would have permitted the amendment.

Generally a record cannot be amended after dismissal of an appeal, but there are exceptions to the general rule. In 4 C.J. S. § 1119, p. 1592, it is said: "An appellant cannot amend the record after dismissal of the appeal, although an amendment has been permitted to show jurisdictional facts, the absence of which was the basis for the dismissal. Hence a certiorari to cor-

rect the record will not issue, after the appeal has been dismissed, unless to show jurisdictional facts responsible for the dismissal."

It appears to be a matter of discretion here for this Court, in McGinnis v. Beatty, 27 Wyo. 287, 196 P. 311, 315, commented: "Though we hold that the court has jurisdiction, after an order dismissing an appeal for a defect in the record, to grant a motion to permit an amendment of the record filed in connection with a motion to reinstate or a petition for a rehearing, it should not be understood that such a motion then filed for the first time will be granted in all cases or as a matter of right. But whether it will or ought to be granted must depend upon the facts and circumstances of the particular case, as affecting the right to amend in view of the delay in application, in addition to the showing ordinarily necessary to justify the return of the record for amendment."

The case of Hinton v. Sun Life Ins. Co., 110 Tenn. 113, 72 S.W. 118, 119, appears to be in point here. In the latter case the court said: "This case, under the style of 'W. A. Hinton vs. Sun Life Insurance Company,' was heard on a former day of the term, and an opinion was then rendered directing an affirmance of the judgment of the court below, on the ground that the bill of exceptions was filed after the expiration of the time granted by the circuit judge, and that there was, therefore, nothing upon which the plaintiff in error could assign error. The plaintiff in error has now presented a petition showing that there was a mistake in the transcript by reason of the failure of the clerk of the circuit court to make a true copy, and that with this error corrected it would appear that the bill of exceptions was to be filed within 10 days from July 26th, instead of from July 19th, as the record shows. The prayer of the petition is that the plaintiff in error

be allowed to suggest a diminution of the record, and that, upon the correction as to dates being made, the cause be reheard. The attorney for the defendant in error has filed an answer to the petition admitting its allegations, but insisting that it was the duty of the opposing counsel to examine the record before the original hearing in this court, and to have the correction then made, and that it is now too late. To this counsel for plaintiff in error replies that it was a mistake only as to dates; that such a mistake easily escapes the attention; that no point was made upon the bill of exceptions by counsel for defendant in error on the previous trial, but that this court itself raised the question, and plaintiff in error was not aware of its existence until the opinion came in, and that the determination of the case upon this point has operated in the nature of a surprise upon plaintiff in error. Although the application comes late, we think that under the facts stated it should be allowed. It is not necessary, however, that the suggestion of diminution should be actually made, or a certiorari awarded. The admissions contained in the answer to the petition, when taken in connection with the petition, supply the place of both, and correct the record so as to show that the bill of exceptions was filed in time."

We see no important or substantial difference between the case at bar and the Hinton case, supra, and we think that under the facts before us that the petition and motion of appellant should be granted. The case having been fully submitted as mentioned before, we see no good reason to return the record for the mere physical act of correcting it, and that formality may be dispensed with. So we turn now to the questions submitted on the appeal.

Plaintiffs and respondents, hereinafter designated as plaintiffs, commenced this action against defendant

and appellant, hereinafter designated as defendant, by filing their petition and causing summons to be published. The summons required defendant to answer the petition on September 16, 1950. On September 9, 1950, a motion was filed as follows:

"Comes now the defendant herein and by his attorneys moves the court to make the petition herein filed more definite and certain, by pleading whether the representations set out in paragraph #2 of said petition, as being made by the defendant herein were verbal or in writing and if in writing by pleading the said representations in full.

"Dated this 9th day of September, 1950.

"E. J. Sullivan
"Ernest Wilkerson
"Raymond, Guthrie and Raymond
"By Rodney M. Guthrie."

The motion was signed by Guthrie, he apparently having signed for the other attorneys.

On September 14, 1950, a withdrawal of attorneys was filed, which reads:

"Comes now E. J. Sullivan, Ernest Wilkerson, Raymond, Guthrie and Raymond and file their withdrawal as attorneys for the defendant in the above matter. This withdrawal being made at the express direction and request of Ernest Wilkerson who had originally requested the appearance of the undersigned, Raymond, Guthrie and Raymond in said matter.

Dated this 15th day of September, 1950."

The signatures on the withdrawal were in the same form as in the motion aforesaid. On the answer day, September 16, 1950, an order was signed by the Judge overruling the motion. In addition to other matters the

order recited that "this matter came on to be heard on September 16, 1950, and the plaintiffs appearing by Thos. A. Nicholas, their attorney, and the defendant having been served with process by publication and had actual notice of this action by registered letter, and having appeared by E. J. Sullivan, Ernest Wilkerson, and Raymond, Guthrie and Raymond, his attorneys, and filed a motion to make the petition more definite and certain, the Court examined the petition and the motion, and the Court being fully informed, it is hereby ordered, that the motion to make more definite and certain be, and the same is hereby overruled and denied. Dated at Newcastle, Wyoming, September 16, 1950." The order was silent as to pleading over.

On September 18, 1950, a judgment was signed which includes the following: "and said defendant having appeared herein and made a motion to make the petition more definite and certain, which motion was overruled, and the defendant having failed to file any answer or other pleading, and being in default for answer, and it appearing that the proceedings herein are in all respects regular and in accordance with the statutes in such case made and provided, a trial was had on the merits and the Court being fully informed, finds: * * *" This judgment in substance grants plaintiffs prayer for certain assignments of oil and gas leases, and awards damages against defendant in the sum of $5,000.

On October 18, 1950, and within the term, defendant moved to vacate said judgment, filing with his motion an affidavit, and an answer and cross-petition. The substance of the motion to vacate, so far as necessary or material, may be gathered from a paragraph of counsels' affidavit supporting said motion. It recites: "That the said Judgment was obtained because of unavoidable misfortune and by events which the defend-

ant could not foresee which prevented him from defending said action; that the defendant was advised by a duly licensed and practicing attorney at law in the State of Wyoming that his defense of said action would be properly made and presented; that said attorney had arranged with local counsel at Newcastle, Wyoming, to protect defendant's rights and said local attorney did file a motion in said case; that although defendant was advised that his interests would be cared for and his case properly defended, nevertheless, the local attorneys at Newcastle, Wyoming, just prior to the day for answer, did withdraw their appearance without any notice to the defendant." Defendant claimed, additionally, that the time for answer had not expired when the judgment was entered. Counter affidavits and objections were filed, but we find nothing in them denying the various steps taken in the case up to and including the judgment, and they do not appear to take issue with defendant on defendant's assertion that he had no notice of the withdrawal of the attorneys at the time of the judgment. The affidavits and objections of plaintiff's go mainly to the merits of the case.

The Court, on October 20, 1950, entered the order appealed from overruling defendant's motion to vacate the Judgment aforesaid. The defendant, by his specifications of error and in his brief and argument, advances the same contentions and arguments as made on the motion to vacate in the court below, namely, lack of notice of withdrawal of attorneys, and that the judgment was entered before the time provided in Section 3-1501 Wyoming Compiled Statutes 1945.

It is stated at some length in 7 C.J.S. § 110, p. 944, that an attorney cannot withdraw from a case without leave of court. If that is correct, then the attorneys were still in the case at the time of the judgment, since

there is nothing in the record that indicates that the court ever passed on the withdrawal or gave leave. In 49 C.J.S. § 197, p. 342, it is said that the entry of the judgment is a ratification by the court of the withdrawal. But it is further stated: "However, the withdrawal of the attorney's appearance after the filing of a plea does not withdraw the plea so as to justify a judgment by default; and, where an attorney abandons his client's cause without notice, the client should be given a reasonable time to secure other counsel before judgment is taken against him by default." The record in this case fails to disclose that the defendant had any notice of the withdrawal or that any time was given him to secure other counsel.

We think that there is ample authority that such withdrawal without some notice to the client and a reasonable opportunity to secure other counsel is a ground for opening a default judgment. See Nichells v. Nichells, 5 N.D. 125, 64 N.W. 73, 33 L.R.A. 515; Parks v. Coyne, 156 Mo. App. 379, 137 S.W. 335; Grayson v. Stith, 181 Okla. 131, 72 P. (2d) 820, 114 A.L.R. 276, and see annotation following the latter case, beginning at page 279; McLaughlin v. Nettleton, 47 Okla. 407, 148 P. 987; Utah Commercial & Savings Bank v. Trumbo, 17 Utah 198, 53 P. 1033; Adams v. Rathbun, 14 S.D. 552, 86 N.W. 629. It may be observed that in some of the cases cited vacation of judgment was upheld as a matter of strict legal right, without regard to a meritorious defense, in others the precise point seems not to have been raised, while in others it was necessary to show a meritorious defense in order to succeed in vacating the judgment. In the case of Eager v. Derowitsch, 68 Wyo. 251, 232 P. (2d) 713, this court determined that there was a sufficient showing in this respect. In Lake v. Lake, 63 Wyo. 375, 182 P. (2d) 824, the court in determining the question quoted 1 Free-

**16**

man on Judgments, 5th Ed., § 289, p. 572 as follows: "But the hearing of evidence is confined to the question, whether the judgment has been taken through inadvertance, mistake, surprise or excusable neglect of the defendant. The applicant is not required to make more than such a prima facie showing of merits as arises from his own affidavits. The code did not intend that there should be two trials of the merits. Therefore the defendant is not required to prove his defense, as he would at the trial, nor can his affidavits of merits be controverted." Plaintiffs' contention that no meritorious defense has been shown is, at least, under the facts here, of doubt validity. We have not undertaken to set out the motion to vacate in full, or the answer or cross-petition, or the counter-affidavits and objections. They are lengthy and we believe that other points are decisive of the case.

Defendant contends that he was not properly in default, and that the judgment was premature. He refers us to § 3-1501, W.C.S. 1945, which reads:

"Time for filing pleadings.—The answer, demurrer, *motion or special appearance* by the defendant shall be filed on or before the third Saturday, and the reply, demurrer or *motion* by the plaintiff on or before the fifth Saturday after the return day of the summons or service by publication; and the answer, demurrer or *motion* of a defendant to a cross petition shall be filed on or before the third Saturday, and the reply, demurrer or *motion* on or before the fifth Saturday after the cross petition is filed. *The filing of a motion or special appearance within the time above specified shall prevent the party filing the same from being in default; provided that when such motion or special appearance is filed and overruled, the party filing same shall have ten (10) days thereafter to plead over unless otherwise ordered by the court.*" (Italics supplied and indicate

matter added by amendment and hereinafter considered.)

Plaintiffs claim that this Statute is unconstitutional, but we shall assume, for the moment, that it is not, and turn to the question of the meaning of the Statute, particularly the words, "unless otherwise ordered by the court." There can be no doubt that the court can shorten or lengthen the ten days set by the Statute, and it may be that it could direct an answer to be filed instanter. But no order of any kind was made in this case with reference to answering or pleading over. We do not think that the court can ignore the Statute entirely. If the attorneys for defendant were still in the case, they should have been directed to file the answer. If, instead of doing so, they withdrew, and that with leave of court, then the circumstances might indicate that the withdrawal was justified, and a default, possibly, was justified. But as the record before us is wholly silent on the point, it would seem that the default was entered prematurely. Applying the meaning of the Statute to the facts as now before us we think that it is reasonable to hold that where the order was silent as to time for pleading over, either an attorney or litigant would be justified in assuming, in the absence of an intervening order and some notice thereof, that they had ten days in which to plead further. The defendant was not properly in default and it appears that the judgment was prematurely entered. In McGinnis v. Beatty, 28 Wyo. 328, 204 P. 340, 343, this court said: "However, we do not propose to decide whether or not there was a sufficient showing of a meritorious defense, for we are of the opinion that such a showing is not required of a party, not properly in default, who moves at the same term to vacate a default judgment against him. (Citing cases) In Iowa it has been held that a statute which provides in substance that a default shall

not be set aside unless an affidavit of merits be filed, does not require such affidavit in cases where the party was not actually in default. (Burke v. Dunlap (Iowa) 171 N.W. 293, citing earlier Iowa cases.)"

The judgment herein was at least voidable. See 3 Freeman on Judgments, 5th Ed., § 1289; 49 C.J.S. § 278, p. 499, 34 C.J. 333. The rule to be applied here is properly expressed in McGinnis v. Beatty, supra, and is applicable to this case, unless Section 3-1501, W.C.S. 1945, is unconstitutional as claimed by plaintiffs. So we proceed to a consideration of the constitutional question.

Section 148, Chapter 60 Laws of Wyoming 1886, provided for the time of filing pleadings. The latter section, as amended since 1886, is now Section 3-1501, Wyoming Compiled Statutes 1945. The italicized portions of said section, as hereinabove set forth were included in the act by amendment, Laws of Wyoming, 1939, Chapter 76, the title to the amendatory act reading:

"Original Senate File No. 109

Courts—TIME OF FILING PLEADINGS, ETC. An Act to amend and re-enact Section 89-1043, Revised Statutes of Wyoming, 1931, relating to the time of filing pleadings, special appearances and motions, and the effect thereof."

Plaintiffs claim that the amendment is unconstitutional because the title of the 1939 amendment is within the inhibitions of Section 24, Article III, of the Wyoming Constitution, which provides:

"Only one subject in bill—No bill, except general appropriation bills and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed

in its title; but if any subject is embraced in any act which is not expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

And plaintiffs further assert that the act violates Section 26 of Article III of the Constitution of this State, which section reads:

"Laws—How Amended.—No law shall be revised or amended, or the provisions thereof extended by reference to its title only, but so much thereof as is revised, amended, or extended, shall be re-enacted and published at length."

In determining whether the amendatory act is within the inhibitions of the constitutional provisions mentioned we think that we should first recall a few of the principles governing this court in the construction of the constitutional provisions and the law in question. In 59 C.J. § 448, p. 866, it is stated: "These constitutional provisions have never, in construction, been given a rigid effect, but have been held applicable only to such statutes as come within their terms, when construed according to the spirit of such restrictions, and in the light of the evils to be suppressed. They should receive a reasonable and liberal construction, with the view of upholding the acts of the legislature, and not unnecessarily hampering or embarrassing it in its work; and the court will not extend the construction of the prohibition beyond the mischief it was designed to prevent."

This court commented in Re Fourth Judicial District, 4 Wyo. 133, 32 P. 850, 851, as follows: "The objections should be grave, and the conflict between the act and the constitution palpable, before the judiciary should disregard or annul a legislative enactment upon the sole ground that it embraces more than one sub-

ject, or, when it contains but one subject, on the ground that it is not sufficiently expressed in its title."

And in Board of Commissioners v. Stone, 7 Wyo. 280, 51 P. 605, 607, the court said in referring to Section 24, Article III, supra: "The object of this provision is well understood. It was to prevent surprise or fraud in legislation by means of provisions in bills of which the titles gave no intimation. It was not intended that the title should be an abstract of all the various provisions that a bill might contain, nor was it intended to prevent the incorporation into a single act of the entire statutory law upon one general subject, but only that every provision must be germane to the subject expressed in the title."

In construing the same section of the constitution, the court said in State ex Rel Wyckoff v. Ross, Governor, 31 Wyo. 500, 228 P. 636, 638: "This court has long recognized the principle that this section of the constitution, though mandatory, must be liberally and reasonably construed. In the case In re Fourth Judicial District, 4 Wyo. 133, 142, 32 P. 850, the court quotes the language of Judge Cooley to the effect that the generality of the title is no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary and fair connection. Cooley on Const. Lim. (7th Ed.) p 206. In the same paragraph of that text (p. 205) it is said that: 'To require every end and means necessary or convenient for the accomplishment of a general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible.' And in the case of In re Boulter, 5 Wyo. 329, 339, 40 P. 520, it is said that an act is not invalidated for that reason so long as the subjects of legislation are congruous, cognate or germane and in fur-

therance of the general subject of the enactment, even though the act may authorize many things of a diverse nature to be done. There may be subordinate subjects if they be 'legitimate offspring of the main subject.' ''

In Sutherland Statutory Construction, 3rd Ed., § 1908, it is stated: "The provision in almost all state constitutions that no act shall contain more than one subject, which shall be expressed in its title, is applicable to an amendatory act with the same force as it is to an original act. The constitutional requirement is complied with if the title of the amendatory act identifies the act or section to be amended and declares its purpose to amend, and the new matter added by the amendatory act is germane to the subject of the original act or section, as the case may be. No statement of the matter with which the amendatory act deals nor any expression of the particulars in which the original act or section is altered is necessary. * * * If the title identifies and purports to amend a prior act, any matter properly connected with, or germane to, the subject expressed in the title of that act may be included in the body of the amendatory act. *Any matter that could validly have been enacted as part of the original act under its title is considered germane.*" (Italics supplied.)

Many other cases affirming the broad principles hereinabove set forth have been decided in this jurisdiction. State v. Tobin, 31 Wyo. 355, 226 P. 681; In re Gillette Daily Journal, 44 Wyo. 226, 11 P. (2d) 265; Trent v. Union Pacific, 68 Wyo. 146, 231 P. (2d) 180; Public Service Commission of Wyoming v. Grimshaw, 49 Wyo. 158, 53 P. (2d) 1; State v. Pitet, Wyo. 243 P. (2d) 177.

Plaintiffs contend that the language of the amendment was not "germane to the subject matter or section to be amended and results in burying a provision

of great consequence without benefit of a marker."
They argue in their brief that "the title of the amend-
atory act says nothing whatever about preventing a
default or providing ten days additional to plead or
providing that the court must make an order to pre-
vent an automatic allowance of ten days to plead over."
We should add here that plaintiffs refer to the "buried"
provision above mentioned as Section 184 of Chapter
60, Laws of 1886, now Section 3-2107, Wyoming Com-
piled Statutes 1945, relating to the taking of default
judgments.

In determining the question of the sufficiency of the
title to the amendatory act, we must first consider
whether the so-called new matter in the act,—particu-
larly the language to the effect that "the filing of a mo-
tion or special appearance within the time above speci-
fied shall prevent the party filing the same from being
in default"—has the effect of amending, repealing or
burying Section 3-2107, W.C.S. 1945, as plaintiffs con-
tend. So far as material in this case the latter statute
provides that judgment may be taken "after the de-
fendant is in default for an answer," and that the clerk
may enter judgment "after the expiration of such time
for answer and the defendant's default." It should be
noted here, although not mentioned in the argument or
briefs, that Section 3-3511, W.C.S. 1945, provides, so
far as pertinent to the question under consideration,
that "When all or part of one or more of the causes of
action are not put in issue by answer, judgment may
be taken, as upon a default, for so much of plaintiff's
demand as is not put in issue by the answer * * *."
Neither Sections 3-2107 or 3-3511, W.C.S. 1945, under-
take to fix the time for the answer, but they merely
provide for the taking of judgment after the time for
answer has expired, or where the answer fails to pro-
vide an issue. The amendatory act fixes the time for

the filing of the answer and other pleadings and motions. We do not think that the language of the amendatory act hereinabove quoted operated to prevent the taking of the default judgments as provided for in the statutes last mentioned. Such judgments can still be taken. The quoted language must be construed with the amendment as a whole, and must be liberally and reasonably construed, in the light of the above mentioned authorities. The ultimate effect of the quoted language of the amendatory act is not to prevent default judgments, but rather to extend the time for the filing of the answer when a motion or special appearance is filed, and we have no doubt that this is all that the legislature intended in using the language in question.

Turning now to counsel's contention that the new matter included in the amendment was not germane to the subject matter or section to be amended. It must be borne in mind that Section 26, Article III of the constitution does not prohibit additions to or extensions of existing statutes, but it specifically provides that "no law shall be * * * extended, by reference to its title only," and then goes on and states that "so much thereof as is extended shall be re-enacted and published at length." This provision contemplates extensions and additions. In National Mut. Casualty Co. v. Briscoe, 188 Okla. 440, 109 P. (2d) 1088, 1092, the court, in applying and construing Section 57 of Article 5 of the Oklahoma Constitution — which is substantially the same as both Sections 24 and 26 of Article III of our constitution — said: "Considerable misunderstanding has arisen over the use of the word 'germane,' which does not appear in the section. The garmaneness which is required is that the body of the act be germane to its title. If the title relates to the same general subject as the old section, and is sufficient to cover the new matter,

said new matter need not be germane to the precise, particular provisions of the old section. Otherwise there could never be new legislation except by the creation of a new section."

In State v. Tobin, 31 Wyo. 355, 362, 226 P. 681, this court said: "A reference in the title of the amending act to the section or sections of the statute to be amended by number, accurately indicates the general subject of the legislation to be affected by the amendment, and is not in violation of the foregoing constitutional provision, if the new matters contained in the amended section are germane to the subject of the original sections. * * * If not germane, then of course the title could not be said to clearly indicate the subject of legislation * * * The purpose of the constitutional provision above mentioned was to prevent surprise or fraud in legislation by means of provisions in bills of which the titles give no intimation."

In 25 R.C.L., p. 842, it is well stated: "The term 'subject' as used in these provisions is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. If all parts of an act relate directly or indirectly to the general subject of the act, it is not open to the objection of plurality. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other. This constitutional provision does not contain any limitation on the comprehensiveness of the subject, which may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject, and not several; it may include innumerable minor subjects, provided that all the minor subjects, when combined, form only one general

subject or topic. The connection or relationship of the minor subjects need not be logical; it is enough that they are connected with and related to a single subject in popular signification. Matters which constitute, apparently, two distinct and separate subjects are not so, in the meaning of the constitutional provision, unless they are incongruous and diverse to each other. While this provision is mandatory, yet it is to be construed liberally. It is not intended nor should it be so construed as to prevent the legislature from embracing in one act all matter properly connected with one general subject."

In the case at bar the so-called new matter, or the matter dealing with motions and special appearances, is mentioned not only in the body of the amendatory act but in the title as well, and we cannot escape the conclusion that all of the matter, in the constitutional sense, is properly connected with one general subject. It may be conceded that motions and special appearances are not, in the strict sense, pleadings. Section 3-1202, W.C.S. 1945, defines pleadings as "the written statements by the parties of the facts constituting their claims and defenses." Section 3-1203, W.C.S. 1945, provides that "the only pleadings allowed" are those named in said section, and motions and special appearances are not among those named. But the latter section of the statute does not prohibit the filing of motions. It merely names the instruments in which the "claims and defenses" of litigants must be set forth. Moreover, the legislature, at the same session that the last two mentioned statutes were enacted, provided for and specifically recognized the office and function of the motion in our procedure. See Sections 3-1801 to 3-1806, inclusive, and Sections 3-1409 and 3-1410, W.C.S. 1945. All of the statutes hereinabove mentioned were included in Chapter 60, Laws of 1886, bearing,

of course, section numbers differing from the present ones. But no time for the filing of motions was fixed by the legislature until the amendatory act in question was passed in 1939. Motions have, in popular signification, a natural connection with and relation to pleadings, and consequently, in this case, to the subject and object of the original or amended act. In 71 C.J.S. § 4, p. 21, it is said: "The term 'pleading' has a restricted, as well as a general, meaning, depending on the connection in which it is used and the subject matter of the statute or rule of court in which it appears. In a broad and general sense of the term it embraces all proceedings from the complaint until issue is joined, and, in a still broader sense, it covers all proceedings taken during the progress of the trial, from its inception to its termination." Nor are we unaware of the fact that motions and special appearances have, for years, been filed in our courts, and have often, perhaps loosely, been referred to as pleadings or pleas. It would seem that the new provisions of the act of 1939, set forth in italics in the statute as quoted above, have a close relation to, and a natural connection with the amended act, and that the new provisions are germane to the subject of the amended act. They might properly have been included in the amended act under its title. See State v. Hall, 27 Wyo. 224, 194 P. 476; 59 C.J. § 400, p. 816. Additionally, it will be observed that the title to the amendatory act, as distinguished from the amended act, is broad, the body of the act is, as we determine it, germane to the title, and the title relates to the same general subject as the old or amended act, and this alone meets all of the requirements of the constitutional provisions involved here. See National Mut. Casualty Co. v. Briscoe, supra.

We think that a reading of State v. Hall, supra; 59 C.J. 816, supra; In re Boulter, supra, in addition to

what has already been said, will satisfactorily indicate that counsel's contention—relative to the failure of the title to the amendatory act to mention defaults, the ten days for pleading or the order of the court—is untenable. The matters not mentioned in the title are subordinate subjects and they are "the legitimate offspring of the main subject." In re Boulter, supra.

The act in question is not within the inhibitions of the constitution as contended by plaintiffs.

The order appealed from herein will be reversed with instructions to open up the default, to set aside the judgment entered in the case, to permit the defendant to file the answer and cross-petition, and for such other proceedings not inconsistent with this opinion.

Reversed.

BLUME, C. J., and CHRISTMAS, J., concur.